9 A.3d 1089 (2010)
417 N.J. Super. 384
D. RUSSO, INC., d/b/a Hott 22, Plaintiff-Appellant,
v.
TOWNSHIP OF UNION, Defendant-Respondent.
Expo Video Unlimited, LLC, and Bokram, Inc., d/b/a Video Extra, Plaintiffs-Appellants,
v.
Township of Union, Defendant-Respondent.
Docket No. A-0763-09T1
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 2010.
Decided December 29, 2010.
*1090 Verdiramo & Verdiramo and Daniel R. Aaronson (Benjamin & Aaronson), attorneys for appellants (Vincent S. Verdiramo, Jersey City, and Mr. Aaronson, of counsel and on the brief).
LaCorte, Bundy, Varady & Kinsella, attorneys for respondent (Robert F. Varady, Union, of counsel and on the brief).
Before Judges SKILLMAN, PARRILLO and YANNOTTI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, includes a provision that authorizes a court to award "the prevailing party" reasonable attorney's fees and costs, N.J.S.A. 10:6-2(f). The issue *1091 presented by this appeal is whether a party who brings an action under the Civil Rights Act that results in a change in defendant's conduct may qualify as a "prevailing party" even though the action is dismissed as moot rather than being concluded by a judgment in plaintiff's favor. We conclude that a party who brings an action that is shown to have been a "catalyst" for the cessation of conduct alleged to violate the Civil Rights Act may qualify as a prevailing party entitled to an award of attorney's fees.
In 2006, the governing body of the defendant Township of Union adopted an ordinance regulating sexually-oriented businesses. This ordinance imposed certain restrictions upon the operation of such businesses, including limitations upon their conduct and hours of operation and the imposition of substantial licensing fees, which had not existed before.
Plaintiff D. Russo, Inc., which operates a live nude-dancing establishment in Union called Hott 22, and plaintiffs Expo Video Unlimited, LLC and Bokram, Inc., which operate stores in Union that sell sexually-oriented books, movies and products, brought separate actions under the Civil Rights Act, which were subsequently consolidated, challenging the validity of the ordinance regulating sexually-oriented businesses under the free speech guarantee of the New Jersey Constitution. N.J. Const. art. I, ¶ 6. Plaintiffs obtained temporary restraints and then a preliminary injunction against enforcement of the ordinance, which remained in effect throughout the course of the litigation.
Union twice amended its ordinance regulating sexually-oriented businesses. Plaintiffs claim that those amendments were designed to address the constitutional deficiencies in the original ordinance they had identified in their complaints and that the "successor ordinances were arguably less offensive to the Constitution." Nevertheless, plaintiffs subsequently filed amended complaints, which alleged that the amended ordinances regulating sexually-oriented businesses still violated their rights under the New Jersey Constitution.
On March 11, 2009, Union advised the trial court that it had repealed the amended ordinance regulating sexually-oriented businesses. Plaintiffs claim that their challenges to the validity of the ordinance were the catalyst for its repeal and that, but for their actions, the ordinance would have remained in effect.
Following the repeal of the ordinance, plaintiffs filed a motion under N.J.S.A. 10:6-2(f) for an award of attorney's fees. In opposing plaintiffs' motion, Union contended not only that the "catalyst theory" should not apply in determining whether a litigant is a "prevailing party" entitled to attorney's fees under N.J.S.A. 10:6-2(f), but also that it had repealed its ordinance regulating sexually-oriented businesses for reasons unrelated to the pendency of this litigation,[1] and therefore, plaintiffs could *1092 not qualify as prevailing parties even under the catalyst theory.
By a written opinion dated July 31, 2009, the trial court denied plaintiffs' motion for attorney's fees. Relying upon the Supreme Court of the United States' decision in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which rejected application of the catalyst theory in determining whether a plaintiff qualified as a "prevailing party" under the sections of the Fair Housing Amendments Act of 1988 and Americans with Disabilities Act authorizing awards of attorney's fees, 42 U.S.C.A. §§ 3613(c)(2), 12205, the court concluded that the catalyst theory cannot be relied upon by a party seeking attorney's fees under N.J.S.A. 10:6-2(f). Having reached this conclusion, the court did not make any findings regarding the role this litigation played in Union's decision to repeal its ordinance regulating sexually-oriented businesses.
On September 3, 2009, the trial court entered an order of dismissal of plaintiffs' complaints "with prejudice by consent," which was followed by this appeal from the denial of plaintiffs' motion for attorney's fees.
Before considering the applicability of the catalyst theory to a determination of prevailing party status under N.J.S.A. 10:6-2(f), we note that plaintiffs could be entitled to an award of at least a portion of their attorney's fees even if the catalyst theory were held to be inapplicable. Subsequent to Buckhannon, a number of federal courts of appeals have held that a party who obtains a preliminary injunction against enforcement of a statute that is later repealed, thus mooting that party's challenge to the statute, may be a prevailing party entitled to an award of attorney's fees under a federal fee-shifting statute for the legal work performed in obtaining the injunction. See, e.g., Common Cause/Georgia v. Billups, 554 F.3d 1340, 1356 (11th Cir.), cert. denied, ___ U.S. ___, 129 S.Ct. 2770, 174 L.Ed.2d 271 (2009); Dearmore v. City of Garland, 519 F.3d 517, 520-26 (5th Cir.), cert. denied, ___ U.S. ___, 129 S.Ct. 131, 172 L.Ed.2d 240 (2008). Our courts also have recognized that success in obtaining preliminary injunctive relief may provide a sufficient foundation for an award of the attorney's fees under a fee-shifting statute even though the case became moot before a final adjudication. See, e.g., Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co., 86 N.J. 453, 472, 432 A.2d 48 (1981); Patterson v. Vernon Twp. Council, 386 N.J.Super. 329, 334-35, 901 A.2d 411 (App.Div. 2006). But see Right to Choose v. Byrne, 91 N.J. 287, 317-18, 450 A.2d 925 (1982).
Because we conclude that plaintiffs may seek recovery of their attorney's fees on the ground this action was allegedly the catalyst for repeal of the challenged ordinance and the parties have not briefed the question whether plaintiffs would be entitled to attorney's fees based on their success in obtaining preliminary injunctive relief, we have no need to decide whether plaintiffs may be entitled to a portion of their attorney's fees on this ground. However, if the trial court determines on remand that plaintiffs' actions were not the catalyst for Union's repeal of its ordinance regulating sexually-oriented businesses, plaintiffs may pursue recovery of a portion of their attorney's fees on this alternative ground.
Under the catalyst theory, as described by our Supreme Court in Mason v. City of Hoboken, 196 N.J. 51, 72, 951 A.2d 1017 (2008), a litigant will qualify as a "prevailing party" entitled to an award of attorney's fees under a fee-shifting statute if the lawsuit "achieves the desired result *1093 because [it] brought about a voluntary change in the defendant's conduct." (quoting Buckhannon, supra, 532 U.S. at 601, 121 S.Ct. at 1838, 149 L.Ed.2d at 861). In the absence of a judgment or enforceable consent decree, the catalyst theory entitles a plaintiff to an award of attorney's fees if it "can demonstrate: (1) `a factual causal nexus between plaintiff's litigation and the relief ultimately achieved'; and (2) `that the relief ultimately secured by plaintiffs had a basis in law.'" Id. at 76, 951 A.2d 1017 (quoting Singer v. State, 95 N.J. 487, 495, 472 A.2d 138, cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984)).
In Mason, the Court held that the catalyst theory applies to a request for an award of attorney's fees under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. 196 N.J. at 75-76, 951 A.2d 1017. In reaching this conclusion, the Court relied on the fact that an award of attorney's fees in an action under OPRA is mandatory, that a prevailing party in an action under OPRA may not recover money damages, and the important public interests promoted by OPRA. Ibid.
However, the Court's rationale for applying the catalyst theory in Mason extends beyond requests for attorney's fees under OPRA. The Court began its discussion of this issue by recognizing that "New Jersey law has long recognized the catalyst theory." Id. at 73, 951 A.2d 1017. The Court then surveyed a series of its own decisions and decisions of this court in which the catalyst theory had been applied in granting attorney's fees under fee-shifting statutes other than OPRA. See id. at 73-75, 951 A.2d 1017. Most significantly, the Court quoted with seeming approval our decision in Warrington v. Village Supermarket, Inc., 328 N.J.Super. 410, 420-23, 746 A.2d 61 (App.Div.2000), which applied the catalyst theory to an award of attorney's fees under the fee-shifting provision of the Law Against Discrimination (LAD), N.J.S.A. 10:5-27.1. See Mason, supra, 196 N.J. at 73-74, 951 A.2d 1017.
The Senate sponsor's statement to the Civil Rights Act indicates that one of its purposes was "to address potential gaps which may exist under remedies currently provided by [LAD]." New Jersey Civil Rights Act, Sponsor's Statement to S. 1558, 211th Leg. (2004). Thus, there is a close relationship between LAD and the Civil Rights Act. Furthermore, the language of the fee-shifting provisions of these civil rights statutes is similar: N.J.S.A. 10:5-27.1 provides that "the prevailing party may be awarded a reasonable attorney's fee," and N.J.S.A. 10:6-2(f) provides that "the court may award the prevailing party reasonable attorney's fees." Therefore, these provisions should be given the same construction. See T.H. v. Div. of Dev. Disabilities, 189 N.J. 478, 493, 916 A.2d 1025 (2007) ("[W]hen the Legislature uses the same term in cognate statutes, unless it expressly provides otherwise, the term should be given the same meaning in both").
Our decisions interpreting N.J.S.A. 10:5-27.1 include Warrington, which expressly held that the catalyst theory should be applied in determining who is a "prevailing party" under N.J.S.A. 10:5-27.1. 328 N.J.Super. at 420-23, 746 A.2d 61. We see no reason to reach a different conclusion with respect to the meaning of "prevailing party" as used in N.J.S.A. 10:6-2(f).
Union argues that because the Court in Mason distinguished Buckhannon on the ground that "unlike other fee-shifting statutes, OPRA does not provide for damages," 196 N.J. at 76, 951 A.2d 1017, the Court would follow Buckhannon in interpreting a fee-shifting provision in a statute, such as the Civil Rights Act, which authorizes an award of damages for a violation. *1094 See 10:6-2(c). However, the mere fact that the Court noted this distinction when declining to follow Buckhannon in interpreting OPRA does not indicate that the Court would hold the catalyst theory inapplicable in interpreting the fee-shifting provision of a statute that provides for an award of damages. Indeed, there are a number of contrary indications in the Court's opinion in Mason. The Court expressly noted that "New Jersey law has long recognized the catalyst theory," 196 N.J. at 73, 951 A.2d 1017; it characterized the majority opinion in Buckhannon as having "adopted a narrow view of the term `prevailing party,'" id. at 71, 951 A.2d 1017; and it quoted with seeming approval our opinion in Warrington, which held that the catalyst theory applies to an application for attorney's fees under LAD, id. at 73-74, 951 A.2d 1017. Therefore, there is no basis for concluding that the Court in Mason implicitly overruled Warrington simply because it relied in part on the absence of any damages remedy in OPRA to distinguish Buckhannon. And for the reasons previously set forth, the catalyst theory should be applied in the same manner to attorney's fee applications under the Civil Rights Act as under LAD.
Finally, we note that there are substantial policy reasons for applying the catalyst theory in determining who is a "prevailing party" under the Civil Rights Act. Although N.J.S.A. 10:6-2(c) authorizes an award of damages, parties who are granted preliminary injunctive relief, such as plaintiffs, may suffer no monetary loss as a result of conduct that allegedly violated their civil rights, other than incurring the attorney's fees and costs required to enjoin that conduct and to encourage defendant's cessation of the violation of their civil rights. The denial of an award of attorney's fees under such circumstances, as pointed out in Justice Ginsburg's dissent in Buckhannon, "allows a defendant to escape a statutory obligation to pay a plaintiff's counsel fees, even though the suit's merit led the defendant to abandon the fray, to switch rather than fight on, to accord plaintiff sooner rather than later the principal redress sought in the complaint." 532 U.S. at 622, 121 S.Ct. at 1850, 149 L.Ed.2d at 874. Therefore, we believe our Supreme Court would decline to follow Buckhannon in interpreting the fee-shifting provision of the New Jersey Civil Rights Act and would instead recognize the appropriateness of applying the catalyst theory in this context. See L.W. v. Toms River Reg'l Sch. Bd. of Educ., 189 N.J. 381, 405, 915 A.2d 535 (2007) (noting that "[a]lthough [the] Court may look to federal jurisprudence for guidance when interpreting the LAD, [the Court] will not hesitate to depart `from federal precedent if a rigid application of its standards is inappropriate under the circumstances'") (quoting Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 601, 626 A.2d 445 (1993)).
Accordingly, we reverse the order denying plaintiffs' motion for attorney's fees and remand the case to the trial court to determine whether plaintiffs are entitled to attorney's fees under the test for the application of the catalyst theory set forth in Mason, 196 N.J. at 76, 951 A.2d 1017. On the remand, Union also may present whatever evidence it may have to support its claim that plaintiffs entered into a binding agreement not to seek attorney's fees.
NOTES
[1] Union claimed that it repealed the ordinance because the prosecutor had successfully enforced N.J.S.A. 2C:34-7, which prohibits the location of any sexually-oriented business within 1000 feet of any place of worship, school, playground, child care center, area zoned for residential use, or any other sexually-oriented business, against D. Russo, Inc. Russo had brought a separate action against the prosecutor and Union County challenging the constitutionality of their enforcement of N.J.S.A. 2C:34-7 against the operation of its business. The trial court rejected this challenge, but we recently reversed the dismissal of that action in an unreported opinion and remanded for further proceedings. D. Russo, Inc. v. Romankow, Docket No. A-0633-08T1, 2010 WL 3720292 (Sept. 17, 2010). Plaintiffs Expo Video Unlimited and Bokram were not parties to that action, apparently because the prosecutor had not undertaken enforcement of N.J.S.A. 2C:34-7 against them.